UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FRESH EXPRESS INC.,
    Plaintiff,

    v.

SARDILLI PRODUCE & DAIRY CO., INC.,
    Defendant.

No. 3:09cv1420 (SRU)

## RULING ON DEFENDANT'S MOTIONS TO COMPEL ARBITRATION

The defendant, Sardilli Produce & Dairy Company, Inc. ("Sardilli"), moves to stay proceedings in this case and compel arbitration of the plaintiff's claims against it. (Docs. # 11 & # 13.) For the reasons that follow, those motions are granted.

**I.    Background**

On December 28, 2006, Sardilli contracted to receive pre-cut, packaged fresh produce from Verdelli Farms, Inc. ("Verdelli") between January 1, 2007 and December 31, 2009. Under the contract, Sardilli served as a produce broker, buying produce from Verdelli and reselling it to Friendly's Ice Cream Corporation. Among other provisions, the contract sets forth the quantities and prices of the produce Sardilli agreed to buy and contained the following arbitration clause:

> If a dispute arises out of or relates to this contract, or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation administered by the Produce Reporter Company using the "Produce Customs and Guidelines." If the dispute cannot be settled by mediation, it shall be settled by arbitration administered by the Produce Reporter Company using the "Produce Customs and Guidelines," and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

Def.'s Mem. Ex. A at 5.

On October 15, 2007, the plaintiff, Fresh Express, Inc. ("Fresh Express") acquired all of Verdelli's stock, rendering Verdelli the plaintiff's wholly owned subsidiary. On October 30,

2007, after Fresh Express's acquisition of Verdelli, Verdelli accepted Sardilli's offer to extend the produce-supply contract through December 31, 2012. Def.'s Mem. Ex. B at 1. The terms of the original contract were to remain the same except for modifications to the agreement's pricing scheme beginning in 2010. *Id.* The extension and modification became effective on October 30, 2007, the date of Sardilli's receipt of Verdelli's acceptance. *Id.* Evidence submitted by the defendant shows that Sardilli and Fresh Express were in contact following the contract extension, and that Sardilli understood its agreement to be with both Verdelli, the signed counterparty, and Fresh Express, Verdelli's corporate parent. *See* Def.'s Reply Mem. Ex. 1 (letter from Sardilli's president to Verdelli's Director of National Accounts regarding negotiations between Sardilli and Fresh Express concerning additional price modifications).

This lawsuit was commenced in September 2009. Fresh Express complains that Sardilli failed to pay $195,286.96 for produce Fresh Express supplied between January 31 and February 26, 2009. Fresh Express seeks a declaration that it has a valid trust claim in the amount of $195,286.96, plus interest, costs, and attorneys' fees, under the Perishable Agricultural Commodities Act of 1930 ("PACA" or the "Act"), which governs "the wholesale trade in perishable goods such as fresh fruits and vegetables." *G&T Terminal Packaging Co. v. U.S. Dep't of Agric.*, 468 F.3d 86, 88 (2d Cir. 2006). In addition to declaratory relief, Fresh Express seeks that amount of damages from Sardilli pursuant to PACA. Fresh Express also seeks damages for common law breach of contract. Sardilli now moves the court to stay all proceedings in this case and compel arbitration of Fresh Express's claims pursuant to section four of the Federal Arbitration Act ("FAA"), codified at 9 U.S.C. § 4.

**II. Discussion**

A court deciding a motion to stay proceedings and compel arbitration engages in a four-step inquiry.

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008) (quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998)). Fresh Express only challenges the first and third parts of that test. Specifically, Fresh Express first argues that it never agreed to arbitrate because the written arbitration agreement was between Sardilli and Verdelli, and not between Sardilli and Fresh Express; alternatively, the plaintiff claims that it supplied the produce to Sardilli based on the terms of individual invoices, and not according to the contract Sardilli negotiated with Verdelli. With respect to the third step, Fresh Express argues that, even if it is subject to the arbitration clause, its PACA claims are non-arbitrable. Because the dispute before the court concerns only the first and third steps, I focus on them chiefly; nevertheless, I address all four parts of the arbitration analysis.

Fresh Express is correct that only Verdilli entered the written arbitration agreement with Sardilli and that, as a general matter, the duty to arbitrate may only be enforced against a party who consents to enter arbitration. *See Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 358 (2d Cir. 2008) ("It is black letter law that an obligation to arbitrate can be based only on consent."); *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 131 (2d Cir. 2003) ("Arbitration is a matter of contract; so 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" (quoting *United Steelworkers of Am. v. Gulf Navigation Co.*, 363 U.S. 574, 582 (1960))). Fresh Express is also correct that an arbitration agreement entered into by a wholly owned subsidiary does not, by itself, obligate the subsidiary's parent company to arbitrate matters under that agreement, too. *See Thomson-CSF,*

3

*S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 780 (2d Cir. 1995) (holding that parent companies are not usually obligated to arbitrate according to the terms of their subsidiaries' arbitration agreements). Rather, a parent company that is a non-signatory to an arbitration agreement is only required to arbitrate when the party seeking arbitration makes "a full showing" that the parent company is obligated according to "some accepted theory under agency or contract law." *Id.* The Court of Appeals has set forth five such theories under which a non-signatory parent may be bound to enter arbitration with a signatory party: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Id.* at 76; *see also Merrill Lynch*, 337 F.3d at 131 (holding that "a willing signatory . . . seeking to arbitrate with a *non-signatory* that is unwilling . . . must establish" one of those five theories to enforce the arbitration agreement).

Sardilli has established that Fresh Express must arbitrate its PACA and breach-of-contract claims under the fifth theory, estoppel. In order for a signatory to compel a non-signatory to participate in arbitration as a matter of estoppel, the non-signatory must have "knowingly exploit[ed] the agreement" by, firstly, receiving notice of the agreement that contains the arbitration provision and, secondly, knowingly accepting that agreement's benefits. *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993). Furthermore, the benefit received must directly flow from the contract; indirect benefits not covered by the agreement's terms will not support a theory of estoppel. *See MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 61 (2d Cir. 2001) ("[T]he benefit derived from an agreement is indirect where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself."); *Thomson-CSF*, 64 F.3d at 779 (holding that non-signatory parent's alleged benefit of greater

market share stemmed from its acquisition of the subsidiary company, and not from the subsidiary's contract with the signatory party seeking to enforce the arbitration agreement against the parent company).

Sardilli has demonstrated that Fresh Express knowingly exploited the agreement between Sardilli and Verdelli. First, the evidence is undisputed that Fresh Express was aware of the Sardilli-Verdelli contract. The defendant has submitted communications between it and Verdelli/Fresh Express from 2008 showing that Fresh Express participated in negotiating the prices Sardilli would pay for Verdelli's produce under the contract extension; those communications demonstrate that Fresh Express was driving the bargaining based on calculations of its, and not Verdelli's, costs of supplying produce. Def.'s Reply Mem. Ex. 1 at 1. In other words, Fresh Express was aware of the terms of the agreement between Sardilli and Verdelli and was seeking to adjust them further in its favor. Additionally, when Sardilli offered the contract extension to Verdelli in 2007, it addressed the offer letter to, and formatted the counterparty's signature line as, "Verdelli Farms/Fresh Express." Def.'s Mem. Ex. B at 1. Although Fresh Express may be correct that no such joint corporate entity exists, Sardilli's letter lends support to the notion that Fresh Express was involved in Verdelli's business following its acquisition and, therefore, would have had notice of the contract between Sardilli and Verdelli.

With regards to the second element of estoppel, not only did Fresh Express know of the agreement, it knowingly benefited from it. Fresh Express's complaint proves that clearly enough: Fresh Express, through its wholly owned subsidiary, received regular payments from Sardilli in exchange for providing its produce; now, after Sardilli allegedly failed to pay for goods supplied between January and February 2009, Fresh Express is suing for damages. Cmplt. ¶¶ 7-8, 27-28. The submitted evidence reveals that Fresh Express received payments from

Sardilli based on the Sardilli-Verdelli contract's terms. Fresh Express therefore not only knowingly but directly benefited from the agreement that Sardilli and Verdelli entered.

Fresh Express attempts to avoid the conclusion that it must arbitrate its claims as a matter of estoppel by arguing that its supply of produce to Sardilli was governed not by the contract between Sardilli and Verdelli but by individual invoices Fresh Express submitted with each shipment of produce. Fresh Express, however, has not submitted any invoices as evidence of those contracts or otherwise demonstrated how they were independent, legally enforceable agreements and not simply bills for payment pursuant to the Sardilli-Verdelli contract. "In the context of motions to compel arbitration brought under the Federal Arbitration Act . . . the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). That standard requires the party opposing the motion to compel arbitration to introduce evidence establishing a question of fact once the moving party has made a prima facie case that an arbitration agreement existed. *Id.*; *see also Hines v. Overstock.com, Inc.*, No. 09-4201-cv, 2010 WL 2203030, at *1 (2d Cir. June 3, 2010) (unpublished opinion) (describing opposing party's burden "to put the making of [the arbitration] agreement 'in issue'" after the moving party makes "a prima facie initial showing that an agreement to arbitrate existed"). Sardilli has met its initial prima facie burden; in response, Fresh Express has only offered assertions without any further proof. In the absence of evidence that Fresh Express or Verdelli supplied produce to Sardilli according to an agreement other than the Sardilli-Verdelli contract, I conclude that, although it was not a party to the written agreement to arbitrate, Fresh Express is estopped from challenging the enforcement of the agreement on this ground.[1] I now turn to the remaining steps of the arbitration analysis.

---

[1] Because I conclude that Fresh Express is not a party to the agreement, but is instead

The second step, which examines whether the plaintiff's claims fall within the scope of the arbitration clause, is straightforward. Indeed, Fresh Express does not contest that its claims against Sardilli are within the scope of the arbitration clause. The broad phrasing of the arbitration clause—namely, its governing of any dispute "that arises out of or relates to this contract"—presumptively covers the PACA and breach-of-contract claims asserted against Sardilli for its alleged nonpayment for goods. *See Oldroyd*, 134 F.3d at 76 (holding that similarly broad arbitration clause "justifies a presumption of arbitrability"). Fresh Express has failed to introduce any evidence to rebut this presumption. *See id.* (concluding that claims were within arbitration agreement's scope because non-moving party did not introduce rebuttal evidence). I therefore conclude Fresh Express's claims are within the scope of the arbitration clause.

The third step examines whether any asserted statutory rights are non-arbitrable. The first three counts in Fresh Express's complaint allege actions under PACA, a federal statute. Fresh Express contends that Congress intended PACA claims to be adjudicated in federal court, and not before private arbitrators. In particular, Fresh Express argues that enforcing arbitration agreements for PACA claims will deter produce buyers from complying with their statutory obligations and will prevent produce sellers from obtaining immediate injunctive relief.

> The FAA embodies the liberal federal policy favoring arbitration agreements and establishes that, as a matter of federal law, any doubts concerning the

---

estopped from litigating its claims in federal court, I do not need to address Fresh Express's argument that, assuming it was a party to the contract, it was only a party to the October 30, 2007 contract extension, which, Fresh Express claims, only governed transactions beginning in January 2010, after the events giving rise to this suit. I note, however, that Fresh Express's argument is mistaken because it misconstrues the terms of the contract extension. The terms of the extension, including the arbitration agreement, became effective on October 30, 2007, when Sardilli received Verdelli's acceptance. Thus, had I found Fresh Express to be a signatory to the contract extension, I would have concluded that it was subject to the arbitration agreement beginning on October 30, 2007, and that its claims against Sardilli are covered by that provision.

> scope of arbitrable issues should be resolved in favor of arbitration. . . . When statutory claims are involved, a party can prevent enforcement of the arbitration agreement only by showing that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue.

*Guyden*, 544 F.3d at 382 (quotations omitted).  The burden of proving that Congress intended a statutory claim to be non-arbitrable lies with Fresh Express, the party opposing arbitration. *Oldroyd*, 134 F.3d at 78.

With respect to its first argument, Fresh Express posits that arbitration will encourage produce brokers to delay making payments owed to suppliers, which is contrary to PACA's purpose. *See* 7 U.S.C. § 499b(4) (establishing as "unlawful" the failure to "make a full payment promptly in respect of any transaction" covered by the Act); § 499e(a) (establishing that violation of section 499b entitles "the person or persons injured . . . [to] the full amount of damages . . . sustained in consequence of such violation").  But Fresh Express provides no basis to support its conclusory propositions that arbitration will fail to provide a forum in which suppliers' PACA rights can be vindicated, and will fail to deter produce brokers from reneging on their payment obligations.  Rather, the arbitration forum provides a mechanism for produce suppliers to obtain compensation for payments owed under the Act and thereby discourages brokers from shirking their statutory responsibilities. *Cf. Guyden*, 544 F.3d at 383-84 (concluding that arbitration provided compensatory remedies consistent with purpose of the Sarbanes-Oxley Act); *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 205 (2d Cir. 1999) (concluding that arbitration was consistent with Title VII because it provides for compensatory damages, punitive damages, and fee shifting provided for under the statute).  Produce suppliers can adequately vindicate their PACA rights in arbitration.  Thus, the plaintiff has not met its burden of showing Congressional intent to preclude arbitration of its PACA claims against Sardilli.

Fresh Express also maintains that its PACA claims are non-arbitrable because arbitration does not afford suppliers the possibility of immediate injunctive relief. Putting aside the fact that Fresh Express is not seeking such injunctive relief in this suit, Fresh Express's argument does not prove that PACA claims are non-arbitrable. At most, Fresh Express demonstrates that, should it seek a preliminary injunction against Sardilli, it may do so in federal court while the merits of its PACA action are resolved in arbitration. *See Am. Exp. Fin. Advisors Inc. v. Thorley*, 147 F.3d 229, 231 (2d Cir. 1998) (holding that federal courts may resolve actions for preliminary injunctions even if the merits of the claim are to be determined in arbitration). The right to obtain injunctive relief, in other words, does not imply a parallel right to litigate fully a claim in federal court contrary to the terms of an arbitration agreement. Finally, the fact that PACA permits produce suppliers to sue in federal court, *see* 7 U.S.C. § 499e(c)(5), is insufficient to prove that Congress intended to preclude the arbitration of PACA claims. "The fact that portions of the statute contemplate litigation . . . does not demonstrate congressional intent to preclude arbitration of such claims. . . . Several other federal statutes, under which claims have been held to be arbitrable by this Circuit and the Supreme Court, contain similar provisions in their enforcement sections." *Oldroyd*, 134 F.3d at 78 (citations omitted).

The court must address the fourth step of the arbitration analysis only if some claims are determined to be non-arbitrable. Because I hold that all of Fresh Express's claims—both its PACA and common law causes of action—against Sardilli fall within the arbitration clause, I need not address this final part of the arbitration test.

### III. Conclusion

For the foregoing reasons, Fresh Express's claims against Sardilli are subject to the arbitration agreement that Sardilli entered with Verdelli, Fresh Express's wholly owned subsidiary. Sardilli's motions to stay proceedings and compel arbitration (docs. # 11 & # 13) are

9

GRANTED.

    It is so ordered.

    Dated at Bridgeport, Connecticut, this 15th day of September 2010.

                                         /s/ Stefan R. Underhill
                                         Stefan R. Underhill
                                         United States District Judge